ROBERTA SUE THORNE, *etc.*

*v.*

E. B. ROUSH, *Dir., Barbers and Beauticians, et al.*

(No. 14608)

Decided December 18, 1979.

*Jolyon W. McCamic, McCamic & McCamic* for petitioners.

*Chauncey H. Browning,* Attorney General, *David R. Brisell,* Assistant Attorney General, for respondents.

McGRAW, JUSTICE:

This case presents the single question of whether a mandatory apprenticeship imposed by W. Va. Code § 30-27-3 may constitutionally be required as a prerequisite to the lawful practice of barbering in this State.

The petitioner, Roberta Sue Thorne, is a 41-year-old resident of Wheeling, West Virginia. On May 5, 1979, Ms. Thorne graduated from Wheeling Barber College, a duly licensed and approved school of barbering. Following her graduation, Ms. Thorne successfully passed a competency examination administered by the State Board of Barbers and Beauticians and was licensed as a duly qualified "junior barber" on the 25th day of July. The only remaining obstacle standing between Ms. Thorne and her license as a "barber" is the fact that she has not served a twelve-month apprenticeship as required by W.

Va. Code § 30-27-3.[1] She has been unable to gain employment in that capacity.

Ms. Thorne argues that the requirement of a period of "junior barbering," essentially an apprenticeship, is unconstitutional because it denies her equal protection of the law, W. Va. Const., art. 3, § 10, and constitutes an abuse of the State's otherwise valid interest in policing the barbering trade. Based upon these contentions, she has filed this petition for a writ of mandamus to compel the defendant members of the West Virginia Board of Barbers and Beauticians to issue to herself and all other persons similarly situated a license as a fully qualified barber.

Initially, we note that the State has a valid interest in regulating the barbering profession as an incident to policing the health and welfare of the citizens of this State. *Quesenberry v. Estep,* 142 W.Va. 426, 95 S.E.2d 832 (1956); *Ransone v. Craft,* 161 Va. 332, 170 S.E. 610 (1933). *See also, Mountaineer Disposal Service v. Dyer,* 156 W.Va. 766, 197 S.E.2d 111 (1973); *City of Huntington v. State Water Commission,* 137 W.Va. 786, 73 S.E.2d 833 (1953). Indeed, this Court has held that the power of the Legislature to enact laws relating to the public welfare is "almost plenary" under W. Va. Const. art. 6, § 1, and

---

[1] W. Va. Code § 30-27-3 reads in part:

An applicant for a licensure as a barber ... shall present satisfactory evidence that he or she ... has been graduated from a school of barbering ... approved by the State Board of Barbers and Beauticians ... and shall transmit with his application an examination fee of $20.00. The examination shall be of such character as to determine the qualifications and fitness of the applicant to practice barbering..., and shall cover such subjects germaine to the inquiry as the board may deem proper. If an applicant for licensure as a barber or beautician successfully passes such examination and is otherwise duly qualified, as required by this section, the board shall license the applicant as a duly qualified junior barber.... *Upon proof that the holder of such a license has served as a junior barber ... for a period of not less than 12 months from the original date of such license,* accompanied by a certificate of health from a duly licensed physician, *the board shall issue to the applicant a license authorizing the applicant to practice barbering ... in this state.* (emphasis added)

that its powers are limited only by express restriction or restrictions necessarily implied by a provision or provisions of our Constitution. *Robertson v. Hatcher*, 148 W.Va. 239, 135 S.E.2d 765 (1964); *State ex rel. County Court of Marion County v. Demus*, 148 W. Va. 398, 135 S.E.2d 352 (1964).

However, in regulating a given occupation, as in all legislative matters based upon the police power, regulations will only be valid if they bear some reasonable relationship to the public health, safety, morals or general welfare. *State ex rel. Cobun v. Town of Star City*, ____ W.Va. ____, 197 S.E.2d 102 (1973); *Quesenberry Estep, supra; Carter v. City of Bluefield*, 132 W.Va. 881, 54 S.E.2d 747 (1949); *Bowman v. Virginia State Entomologists*, 128 Va. 351, 105 S.E. 141, 12 A.L.R. 1121 (1920).

Inherent in the due process clause of the State Constitution[2] are both the concept of substantive due process and the concept of equal protection of the laws. In order for a statute to withstand constitutional scrutiny under the substantive due process standard, it must appear that the means chosen by the Legislature to achieve a proper legislative purpose bear a rational relationship to that purpose and are not arbitrary or discriminatory. *State ex rel. Harris v. Calendine*, ____ W.Va. ____, 233 S.E.2d 318 (1977).

In the present case, the question is—does the imposition of a required apprenticeship bear a rational relationship to some legitimate State concern. *McGowan v. Maryland*, 366 U.S. 420, 81 S. Ct. 1101, 6 L. Ed.2d 393 (1961); *State v. Wender*, 149 W.Va. 413, 141 S.E.2d 359 (1965).

In theory, it would seem that there is good reason for requiring a newly graduated barber to serve a practical apprenticeship. Indeed, the apprenticeship system for barbers is by no means unique to West Virginia. The

---

[2] W. Va. Const. art. 3, § 10 provides as follows:

No property shall be deprived of life, liberty or property, without due process of law...

record reveals that there are presently apprenticeship programs in forty-one states, and it seems to be a widespread belief that this system is of great value in insuring practical competency in barbering.[3]

Yet, while a mandatory apprenticeship might very well be a rational legislative choice in the abstract, rationality is lost in the statutory scheme presently in effect in West Virginia.

Probably the most critical defect is the lack of any standard against which competence acquired as an apprentice may be measured. There is no examination, nor guideline by which the junior barber is to be evaluated during the apprenticeship. As it presently stands, there is no assurance that anyone who practices as a "junior barber" will gain any measure of competence at all.

The statute places no emphasis on the actual acquisition of practical competence. Instead, licensure is keyed to the new graduate's ability to acquire employment as a "junior barber." All that is required to satisfy the apprenticeship requirement is to find a position with a

---

[3] In a matter tangentially, but unmistakably, related to the instant case, we note that in addition to barbers and beauticians, the Legislature has moved, in some manner, to regulate the practice of some thirty other occupations and professions. W. Va. Code, Ch. 30.

In regard to twenty-two of these, there is no express statutory mention of any apprenticeship or experiential requirement, per se. However, in eight categories aside from the one herein discussed, there is some sort of requirement of practical experience (which is not necessarily of the same sort as required of barbers). These would include: Pharmacists, W.Va. Code, § 30-5-5; Embalmers and Funeral Directors, W.Va. Code § 30-6-5; Surveyors, W.Va. Code § 30-13A-5; Osteopathic Physicians and Surgeons, W.Va. Code §§ 40-14-4 and 5; Sanitarians, W.Va. Code, § 30-17-4; Foresters, W.Va. Code, § 30-19-6; Psychologists, W.Va. Code § 30-21-7; and Occupational Therapists, W.Va. Code § 30-28-8.

Additionally, there are another six categories in which practical experience can possibly come into play (generally as an alternative to formal study). These include: Physicians; Assistants, W.Va. Code § 30-3A-3; Certified Public Accountants, W.Va. Code § 30-9-2; Architects, W.Va. Code §§ 30-12-3 and 4; Engineers, W.Va. Code § 30-13-6; Private Detectives, W.Va. Code § 30-18-2; and Landscape Architects, W.Va. Code § 30-22-6.

barber shop, and retain that position for twelve months. At the conclusion of the 12-month period, a license is issued to the apprentice without any further inquiry. The passage of time, rather than the acquisition of practical competence, satisfies the statute. The acquisition of experience is left to personal initiative in the individual case.

Our initial dismay over the seemingly pointless system mandated by W. Va. Code, § 30-27-3, is reinforced by a closer look at the national statistics shown in the record. While it is true that forty-one states presently require apprenticeships, thirty-nine of those states require an examination following the experience, thus providing a mechanism to insure the acquisition of practical competence. Only two states provide for an unguided and standardless apprenticeship. West Virginia marches in lonely league with the great State of Alabama. After today, Alabama must march alone.

In short, while we have no quarrel with the concept of training by apprenticeship, we are convinced that the "junior barber" provision here at issue is not a reasonable and valid example of such training. An apprenticeship which contains no standard of performance to be met, nor test to be passed, and which appears on its face to do no more than provide a labor pool to be exploited by previously licensed practitioners, serves no legitimate purpose and fails to contribute in any demonstrable way to the welfare of the public. Accomplishing no valid purpose, such a requirement serves only to restrain trade and curtail individual liberty, all in contravention of public policy based in the dictates of substantive due process and equal protection of the law required by W. Va. Const. art. 3, § 10. *State ex rel. Harris v. Calendine, supra.*

A very similar statute was confronted by the Supreme Court of Delaware in the case of *Hoff v. State*, 39 Del. 134, 197 A.75 (1938). In that case the court said at 197 A. 84:

> Beauty culture is not one of the learned professions. It is a quite common occupation in many of its features. The manner and extent of its regulation ought not to be out of balance with a common sense regard for the protection of the public health. The act, considered as a whole, is unreasonable and oppressive. It far exceeds the necessity that may exist to protect the public against ignorance and unsanitary practices. The provisions which have been particularly considered have no substantial relation to the public health and safety. . . .

The statute enacted by the West Virginia Legislature seems, in many respects, to mirror the one which faced the *Hoff* court. Taken as a whole, the licensing procedure leaves one with the impression that it was designed more to restrain trade than to protect the public. If the apprenticeship is truly of educational value, it should be provided for in such a manner that it does not work hardship on "outsiders" who cannot get jobs with established barbers. Perhaps, the apprenticeship should even be provided for as a part of the academic package, along the lines of a medical internship. This would insure availability of such positions, and would place quality control in the hands of those who test competence.

We are further puzzled by the provisions in W. Va. Code § 30-27-7 relating to the number of apprentices who may lawfully be employed in any one shop. That section of the Code provides that:

> Each barber shop in this state may employ at least one junior barber therein. However, in shops regularly employing more than three licensed barbers only one such junior barber may be employed for every three such licensed barbers, but in no event can more than three such junior barbers be employed in any one barber shop, and each beauty shop shall have the right to employ one junior beautician for each licensed beautician therein.

For some reason, the Legislature has decided that each "junior barber" will need the supervision of three

licensed barbers and, additionally, that it will be impossible for any barber shop, regardless of how large it may be, to employ more than three "junior barbers." At the same time, and indeed in the same sentence, the Legislature has given beauty shops the right to employ one "junior beautician" for each licensed beautician employed in the shop, with no maximum limit on the total which may be employed.

If this disparate quota system has even a remote bearing upon the public health, it is too remote for us to see. If, as contended, apprentices may reasonably be required to work under the supervision of an experienced barber, no one has suggested why, if two such barbers operating separate shops can efficiently supervise two apprentices, they cannot as well exercise the same supervision when all four are working in the same shop. *Marx v. Maybury*, 30 F.2d 839 (W.D. Wash. 1929).

Once again, in the absence of some reasonable basis, such a restriction on trade and individual liberty cannot stand. The "junior barber" quota system, set forth in W.Va. Code § 30-27-7, having no rational relationship to any legitimate state purpose, must fall as constitutionally infirm under W. Va. Const. art. 3, § 10. As we read these statutes, we are haunted by the spectre of *Hoff*. "The declared purpose of the act is subservient to its real purpose, which is to erect a monopoly, to create a guild, a thing inimical to the public interest."

Indeed, under the facts of this case, the apprenticeship regulation works particular hardship on the public interest. The petitioner's formal barbering education was financed through the Comprehensive Employment and Training Act (CETA), 29 U.S.C.A. § 801 *et seq*. The purpose of the CETA Act is to provide for proper education and to maximize employment opportunity. In the present case, the required apprenticeship serves only to contravene the broad social purposes of the program under which Ms. Thorne was educated.[4]

---

[4] We are especially concerned with the subtle suggestion of occupational discrimination against those who have been educated in

Given the facts of this case, we see no supportable rationale for the apprenticeship and hold it unconstitutional as an improper restraint upon the petitioner's right to practice her chosen trade.

For the foregoing reasons, the writ of mandamus prayed for is granted. The defendant Board of Barbers and Beauticians is directed to issue a barber license to the petitioner and to all others who have satisfactorily completed the required course of study at an approved state college of barbering, and who have passed the required competency test and paid the requisite fee.

*Writ awarded.*

the manner of this petitioner. It would be troublesome to learn that the "junior barbering" requirement is used by those in the trade to "blackball" anyone who does not conform to their personal tastes.