328 S.E.2d 144

**HARTSOCK–FLESHER CANDY CO., etc., et al.**

v.

**WHEELING WHOLESALE GROCERY CO., etc., et al.**

No. CC939.

Supreme Court of Appeals of West Virginia.

Dec. 14, 1984.

Rehearing Denied Feb. 8, 1985.

Jones, Williams, West & Jones and Jerald E. Jones, Clarksburg, for plaintiffs.

Phillips, Gardill, Hazlett & Kaiser and Charles J. Kaiser, Jr., Wheeling, for defendants.

Chauncey H. Browning, Jr., Atty. Gen., Donald L. Darling, and Walt Auvil, Asst. Attys. Gen., Charleston, for amicus curiae.

MILLER, Justice:

Four certified questions have been presented, pursuant to W.Va.Code, 58–5–2, relating to the constitutionality of our Unfair Practices Act, W.Va.Code, 47–11A–1 through –14. This case arises from a com-

plaint filed in the Circuit Court of Harrison County by the Hartsock-Flesher Candy Company and others against the Wheeling Wholesale Grocery Company.[1] All of the parties involved are competing wholesalers in northern West Virginia. In its complaint, Hartsock-Flesher alleged that Wheeling Wholesale was selling cigarettes below cost, in violation of W.Va.Code, 47–11A–2, and requested an injunction and treble damages, pursuant to W.Va.Code, 47–11A–9.

Wheeling Wholesale moved to dismiss the complaint, claiming that the Unfair Practices Act was unconstitutional, but this motion was denied by the trial judge. Subsequently, the following four certified questions were presented to the Circuit Court of Harrison County:

(1) Is the Unfair Practices Act unconstitutional under the substantive due process standard established in Article III, Section 10 of the West Virginia Constitution? (2) Is the Unfair Practices Act unconstitutionally vague under Article III, Section 10 of the West Virginia Constitution and the Fourteenth Amendment to the United States Constitution? (3) Is the Unfair Practices Act special legislation in violation of Article VI, Section 39 of the West Virginia Constitution? (4) Is the Unfair Practices Act violative of the Sherman Act (15 U.S.C. § 1)?

The trial judge answered all four questions in the negative, from which ruling Wheeling Wholesale now appeals.

The Unfair Practices Act was adopted in 1939. The legislature's main reason for adopting the Unfair Practices Act is summarized in W.Va.Code, 47–11A–1, which reads, in part: "The sale of goods at less than the cost thereof results in economic maladjustments and tends toward the creation of monopolies, thereby destroying fair and healthy competition and tending toward bankruptcy among merchants who maintain a fair price policy, and is, therefore, an unfair trade practice." W.Va.

1. The other parties who joined with the Hartsock-Flesher Candy Company were the Chas. M. Sledd Company, the Weirton Wholesale Distributing Company, and the Shulick-Taylor Company. For convenience, we will refer to the appellees as Hartsock-Flesher and the appellant as Wheeling Wholesale.

Code, 47–11A–2, states that it is unlawful for a retailer or wholesaler to sell any product below the cost to the vendor "for the purposes of unfairly diverting trade from or otherwise injuring one or more competitors, and destroying competition."[2] Violations of the Act are punishable through civil and criminal sanctions. W.Va.Code, 47–11A–9 and –11. Since the action brought against Wheeling Wholesale is civil in nature, we will not address the criminal provisions in the Act.

Sales-below-cost statutes have been enacted in a majority of states.[3] Some of these statutes prohibit the sale of all goods and services below cost while others are limited to specific products, such as cigarettes or milk. See 1A R. Callman, The Law of Unfair Competition Trademarks and Monopolies § 7.02 (4th ed. 1981) for a discussion and compilation of these statutes.[4] Most jurisdictions have upheld sales-below-cost statutes as valid constitutional exercises of a state's police power.[5] *See generally* 1A R. Callman, *supra*, §§ 7.07 through .23; Annot., 128 A.L.R. 1126 (1940); Annot., 118 A.L.R. 506 (1939). With this brief background discussion, we now turn to the specific issues raised in this case.

## I.

## SUBSTANTIVE DUE PROCESS

Wheeling Wholesale contends that our Unfair Practices Act should be declared unconstitutional as violative of substantive due process under Article III, Section 10 of the West Virginia Constitution, which provides: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." We have recognized in several cases that this provision does include a substantive due process standard. Although this constitutional provision was not mentioned in Syllabus Point 1 of *State v. Wender,* 149 W.Va. 413, 141 S.E.2d 359 (1965), it was mentioned in the text and its principles summarized in Syllabus Point 1:

"The legislature is vested with a wide discretion in determining what the public interest requires, the wisdom of which may not be inquired into by the courts; however, to satisfy the requirements of due process of law, legislative acts must

**2.** The material portion of W.Va.Code, 47–11A–2, is:

"It shall be unlawful for any person, partnership, firm, corporation, joint-stock company, or other association engaged in business as a retailer or wholesaler within this State, to sell, offer for sale or advertise for sale any article, product or item of merchandise at less than the cost thereof to the vendor, or give, offer to give or advertise the intent to give away any article, product or item of merchandise for the purposes of unfairly diverting trade from or otherwise injuring one or more competitors, and destroying competition."

**3.** On the federal level, the Robinson-Patman Act, 15 U.S.C. § 13a, is somewhat similar to these sales-below-cost statutes, although the comparison is not entirely accurate. The Robinson-Patman Act states that it is unlawful for "any person engaged in commerce" to "sell, or contract to sell, goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor." *See* Section IV, *infra.*

**4.** Legal commentators have analyzed sales-below-cost statutes in a number of articles. *See, e.g.,* Clark, *Statutory Restrictions on Selling Below Cost,* 11 Vand.L.Rev. 105 (1957); Henderson, *Selling Below Cost in Wyoming,* 1 Land & Water L.Rev. 235 (1966); LaRue, *Pitfalls for Price Competitors: State and Federal Restrictions on Below Cost or Unreasonably Low Prices,* 15 W.Res.L.Rev. 35 (1963); McCarthy, *Whatever Happened to the Small Businessman?* The California Unfair Practices Act, 2 U.S.F.L.Rev. 165 (1968); Reiley, *Enforcement of Legislation Prohibiting Sales Below Cost in Washington,* 42 Wash.L.Rev. 817 (1967); Note, *Further Developments in the Field of Statutory Bans Against Selling Below Cost,* 34 Va.L.Rev. 201 (1948); Comment, *Sales Below Cost Prohibitions: Private Price Fixing Under State Law,* 57 Yale L.J. 391 (1948).

**5.** *See, e.g., Carroll v. Schwartz,* 127 Conn. 126, 14 A.2d 754 (1940); *Moore v. Northern Kentucky Independent Food Dealers Ass'n,* 286 Ky. 24, 149 S.W.2d 755 (1941); *Rust v. Griggs,* 172 Tenn. 565, 113 S.W.2d 733 (1938); *McElhone v. Geror,* 207 Minn. 580, 292 N.W. 414 (1940); *Associated Merchants of Montana v. Ormesher,* 107 Mont. 530, 86 P.2d 1031 (1939); *State v. Langley,* 53 Wyo. 332, 84 P.2d 767 (1938); *Dikeou v. Food Distributors Ass'n,* 107 Colo. 38, 108 P.2d 529 (1940); *State v. Walgreen Drug Co.,* 57 Ariz. 308, 113 P.2d 650 (1941); *Wholesale Tobacco Dealers Bureau of Southern California v. National Candy & Tobacco Co.,* 11 Cal.2d 634, 82 P.2d 3, 118 A.L.R. 486 (1938); *State v. Sears,* 4 Wash.2d 200, 103 P.2d 337 (1940).

542

bear a reasonable relationship to a proper legislative purpose and be neither arbitrary nor discriminatory."

*See also DeCoals, Inc. v. Board of Zoning Appeals,* W.Va., 284 S.E.2d 856 (1981); *Thorne v. Roush,* 164 W.Va. 165, 261 S.E.2d 72 (1979); *O'Neil v. City of Parkersburg,* 160 W.Va. 694, 237 S.E.2d 504 (1977); *State ex rel. Harris v. Calendine,* 160 W.Va. 172, 233 S.E.2d 318 (1977).

In *Wender,* our Cigarette Sales Act, W.Va.Code, 47–13–1 through –15,[6] was challenged on the ground that it was unconstitutional. In examining cases from other jurisdictions, we noted that similar sales-below-cost statutes had generally been upheld and after listing several of these cases, stated:

"The general principle derived from these cases is that the prohibition of sales below cost lies within the police power of the state and the legislature is vested with a wide discretion in determining whatever economic policy may be deemed to promote the public welfare, which policy the courts are powerless to override provided the laws passed bear a reasonable relationship to the legislative purpose and are neither arbitrary nor discriminatory." 149 W.Va. at 417, 141 S.E.2d at 362.

Despite this broad statement of deference to legislative judgment, we concluded that since the cigarette industry is not one affected with the public interest, it was a violation of due process under our State Constitution for the legislature to attempt to regulate the sale of cigarettes. Wheeling Wholesale argues that the reasoning used in *Wender* to invalidate the Cigarette Sales Act should be applied to the Unfair Practices Act. We are unable to agree.

Our holding in *Wender* is comparable to our decision in *State v. Memorial Gardens Development Corp.,* 143 W.Va. 182, 101 S.E.2d 425, 68 A.L.R.2d 1233 (1957), in which we held that the legislature lacked the authority to regulate the funeral industry. However, *Memorial Gardens* was reversed in *Whitener v. W. Va. Board of Embalmers,* 169 W.Va. 513, 288 S.E.2d 543

(1982), where we held that the regulation of the funeral industry is within the legitimate scope of the State's police power. Syllabus Point 2 of *Whitener* states, in part: "Regulations about how businesses are conducted must simply bear a rational relationship to a legitimate state goal, to be constitutional." We also observed in Syllabus Point 3 of *Whitener,* quoted in part, that "[i]t is the function of legislatures to determine the wisdom and utility of economic legislation."

The point that needs to be emphasized is that the authority of our legislature to regulate economic matters in this State is quite broad, as we stated in *Thorne v. Roush,* 164 W.Va. 165, 261 S.E.2d 72, 74 (1979):

"[T]he power of the Legislature to enact laws relating to the public welfare is 'almost plenary' under W.Va. Const. art. 6, § 1, and ... its powers are limited only by express restriction or restrictions necessarily implied by a provision or provisions of our Constitution. *Robertson v. Hatcher,* 148 W.Va. 239, 135 S.E.2d 675 (1964); *State ex rel. County Court of Marion County v. Demus,* 148 W.Va. 398, 135 S.E.2d 352 (1964)."

Both *Wender* and *Memorial Gardens* are indicative of a time when substantive due process was used by courts to invalidate various laws regulating economic matters. Perhaps the most famous judicial intrusion was by the United States Supreme Court when it struck down New York's statutory limitation on the maximum number of hours that bakers could work in a week. *Lochner v. New York,* 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905). Since the intrusive approach exemplified by *Lochner* has subsequently been abandoned, courts rarely overturn legislation regarding economic matters on the ground that substantive due process has somehow been violated. The United States Supreme Court in *Ferguson v. Skrupa,* 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93, 97, 95 A.L.R.2d 1347, 1352 (1963), observed:

**6.** The Cigarette Sales Act was repealed in 1967. 1967 W.Va.Acts ch. 167.

"The doctrine that prevailed in *Lochner* ... and like cases—that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded. We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws."

*See also, e.g., Rice v. Norman Williams Co.,* 458 U.S. 654, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1983); *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Washington Star Co. v. International Typographical Union Negotiated Pension Plan,* 729 F.2d 1502 (D.C.Cir.1984); *DiPippa v. United States,* 687 F.2d 14 (3d Cir.1982); *Leikind v. Schweiker,* 671 F.2d 823 (4th Cir.1982); *Tobacco Accessories v. Treen,* 681 F.2d 378 (5th Cir.1982); *Matter of Gifford,* 688 F.2d 447 (7th Cir.1982); *First American Title Co. v. South Dakota Land Title Ass'n,* 714 F.2d 1439 (8th Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

■ The Court in *Wender* failed to fully appreciate the fact that as a general rule, in matters of economic legislation, the legislature must be accorded deference, particularly under a substantive due process standard. We are not suggesting that economic legislation may never be found to violate substantive due process. There may be occasions when the use of substantive due process to invalidate legislation on some economic matters may be appropriate, such as where the challenged legislation bears no rational relationship to the public health, safety, morals, and general welfare of this State or where the statute impinges on some fundamental or constitutional right. For example, in *Thorne,* we held that a junior barber apprenticeship, mandated by W.Va.Code, 30–27–3, violated substantive due process because the method chosen to achieve the purpose did not promote the public welfare and intruded on the fundamental right to pursue a livelihood. In *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), the United States Supreme Court struck down a zoning ordinance on substantive due process grounds because it adversely affected the sanctity of the family and only marginally advanced the government's interest in protecting the general welfare. Neither the facts in *Wender* nor in the present case rise to this level of a substantive due process violation.

■ While we approve of the language in Syllabus Point 1 of *Wender* as a correct general statement of substantive due process concepts, we disapprove of the overly intrusive manner in which these principles were applied. Specifically, Syllabus Point 2 of *Wender*,[7] which suggests that our former Cigarette Sales Act, as well as other sales-below-cost statutes, was a price-fixing statute is disapproved. Furthermore, the language in the text of *Wender* which indicates that because a commodity is not "affected with the public interest," the legislature may not constitutionally regulate that commodity in this State is also disapproved. Our disapproval is based on two grounds. First, the Cigarette Sales Act was not a price-fixing statute. *See* Part IV, *infra.* Second, a product or commodity does not have to·be "affected with a public interest" before the legislature may constitutionally regulate the product or commodity and survive a substantive due process analysis. We, therefore, conclude that the present case is not controlled by our decision in *Wender,* which incorrectly applied the substantive due process principles stated therein.

Wheeling Wholesale next argues that W.Va.Code, 47–11A–6, our cost definition statute, which provides for stated markups for the cost of doing business "in the ab-

---

**7.** Syllabus Point 2 of *Wender* states: "Legislation authorizing price-fixing must, among other requirements, concern an item or commodity affected with a public interest to avoid contravening the due process clause of the Constitution of this State."

sence of proof of a lesser cost" and includes the phrase "there shall be deducted [from the invoice cost of an article] all trade discounts, except customary discounts for cash,"[8] is arbitrary and irrational, in violation of substantive due process.

Similar arguments were raised and rejected in *Baseline Liquors v. Circle K Corp.*, 129 Ariz. 215, 630 P.2d 38 (App.), cert. denied sub nom. *Skaggs Drug Centers, Inc. v. Baseline Liquors*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 387 (1981). In *Baseline*, a challenge was made to the Arizona Unfair Sales Act, which has a 12 percent markup provision and an accompanying right to demonstrate a lesser cost of doing business. The appellees in *Baseline* argued that a retailer would be unable to establish a lesser cost of doing business, therefore, the statute requiring a 12 percent markup to cover the cost of doing business was arbitrary. The Arizona Court of Appeals concluded, after citing *Trade Commission v. Skaggs Drug Centers, Inc.*, 21 Utah 2d 431, 446 P.2d 958 (1968), and *Flank Oil Co. v. Tennessee Gas Transmission Co.*, 141 Colo. 554, 349 P.2d 1005 (1960), that there was no merit to the appellees' argument. In reaching this conclusion, the Arizona Court of Appeals cited this passage from *Trade Commission*, 21 Utah 2d at 439–40, 446 P.2d at 963–64, where this observation was made relative to the lesser cost issue:

"All the [Utah Unfair Practices Act] requires is a cost figure arrived at by reasonable accounting methods. A statute is not to be declared invalid because of difficulty in applying its provisions. We think the Act is sufficiently clear to require compliance. The constitutionality of a statute is not to be decided on questions of inconvenience, or difficulty in application of a cost standard." (Footnotes omitted).

The Arizona Court of Appeals in *Baseline* reversed the lower court, which had declared the Arizona Unfair Sales Act unconstitutional on a motion to dismiss. The appellate court mentioned that it was handicapped without an evidentiary record, which is the situation in our case. The lack of an evidentiary record is particularly crucial to Wheeling Wholesale's argument that the provision in W.Va.Code, 47–11A–6, permitting the deduction of "all trade discounts, except customary discounts for cash," is irrational and discriminatory. We are without any evidence to ascertain whether any "customary discounts for cash" are involved in this case. Furthermore, W.Va.Code, 47–11A–8, provides a series of absolute exemptions to a charge of selling below cost, one of which is: "(d) In an endeavor in good faith to meet the legal prices of a competitor as herein defined selling the same article, product or item of merchandise, in the same locality or trade area."[9]

8. W.Va.Code, 47–11A–6(a), defines "cost" for a retailer as follows:

"The term 'cost' when applicable to the business of retailer shall mean bona fide cost and shall mean (i) the invoice cost of the article, product or item of merchandise to the retailer or the replacement cost thereof to the retailer within thirty days prior to the date of sale, offer for sale or advertisement for sale, as the case may be, in the quantity last purchased, whichever is lower, from either of which there shall be deducted all trade discounts, except customary discounts for cash, and (ii) to either of which there shall be added the following items of expense:

"(1) Freight charges not otherwise included in the cost of the article, product or item of merchandise, but which freight charges shall not be construed as including cartage to retail outlet if done or paid for by the retailer;

"(2) A markup to cover, in part, the cost of doing business, which markup in the absence

of proof of a lesser cost, shall be seven percent of the aggregate of invoice cost or replacement cost (whichever is used), less trade discounts as aforesaid, and plus said freight charges."

Subsection (b) defines "cost" for a wholesaler and is substantially the same, except the markup for the cost of doing business is four percent.

9. The full text of W.Va.Code, 47–11A–8, is:

"The provisions of this article shall not apply to any sale made:

"(a) In closing out in good faith the owner's stock or any part thereof for the purpose of discontinuing his trade in any such stock or commodity, and in the case of the sale of seasonal goods or to the bona fide sale of perishable goods to prevent loss to the vendor by spoilage or depreciation;

"(b) When the goods are damaged or deteriorated in quality or where merchandise is sold in bona fide clearance sales, and, in each

Cohen v. Frey & Son, Inc., 197 Md. 586, 80 A.2d 267 (1951), on which Wheeling Wholesale heavily relies, can be distinguished. In Cohen, the Maryland Court of Appeals held that the Maryland Unfair Sales Act was unconstitutionally arbitrary and discriminatory because it did not allow a "cash and carry" wholesaler to deduct customary cash discounts. The court placed considerable emphasis on the facts established at trial involving the substantial disparity occasioned by the Maryland statute's distinction between costs for regular wholesalers and cash discount wholesalers. This distinction was so substantial from a factual standpoint that it caused the court to find the statute to be arbitrary.

■ In fact, it would appear that Cohen's actual holding was limited to this statement: "A statute or ordinance or an administrative order may be valid at one time or place under certain conditions, and invalid at another time and place under other conditions." 197 Md. at 604, 80 A.2d at 276. The Maryland court had earlier upheld the constitutionality of the statute in Blum v. Engelman, 190 Md. 109, 57 A.2d 421 (1948). It appears that it was the peculiar factual pattern in Cohen that brought the court to a different conclusion.[10]

Based on the limited allegations and factual development contained in the pleadings, we are unable to agree with Wheeling Wholesale's argument on the customary cash discount language as rendering the Act violative of substantive due process.

■ In adopting the Unfair Practices Act, the legislature has sought to penalize retailers and wholesalers that engage in unfair competition. We have no difficulty in concluding that the protection of healthy competition in this State is a legitimate goal of the legislature and one that obviously affects the public welfare. We also conclude that the method chosen to attain this laudable purpose is rational in the context of this case which permits a civil action for damages and an injunction by those injured. Therefore, we conclude that the Unfair Practices Act is a rational means of achieving the legitimate legislative goal of promoting healthy competition in this State by penalizing retailers and wholesalers that sell goods below cost in an attempt to destroy competition and does not violate substantive due process concepts of Article III, Section 10 of the West Virginia Constitution.[11]

## II.

## VAGUENESS

The second certified question raises the issue of whether or not the Act is unconstitutionally vague under the Due Process Clauses of the West Virginia Constitution and the Fourteenth Amendment of the United States Constitution. The terms and provisions of the Act specifically challenged as undefined and vague are in W.Va.Code, 47–11A–6, which includes the terms "applicable taxes," "trade discounts," and "customary discounts for cash," and W.Va.Code, 47–11A–8(d), which states that the Act is inapplicable to any

case, merchandise is advertised, marked and sold as such;

"(c) By an officer acting under the orders of any court;

"(d) In an endeavor in good faith to meet the legal prices of a competitor as herein defined selling the same article, product or item of merchandise, in the same locality or trade area;

"(e) For charitable purposes or to relief agencies;

"(f) Where merchandise is sold on contract to departments of the government or governmental institutions."

**10.** It is quite possible that a full evidentiary hearing could establish that the exclusion of

customary cash discounts has a substantial effect on the cost equation, thereby rendering the equation completely arbitrary and irrational. Under our least intrusive remedy doctrine, such a finding would only require us to strike this portion of the cost formulation and not the entire Act. Waite v. Civil Service Comm'n, 161 W.Va. 154, 241 S.E.2d 164 (1978).

**11.** Several recent United States Supreme Court cases have rejected substantive due process attacks on economic regulations that have a far more severe monetary impact. E.g., Hodel v. Indiana, 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981); Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976).

sale made "[i]n an endeavor in good faith to meet the legal prices of a competitor." Wheeling Wholesale contends that these undefined terms and provisions make it impossible for a retailer or wholesaler to clearly and fully understand the meaning of the Act.

Our general standard for determining if a particular statute is unconstitutionally vague has traditionally been applied to criminal statutes as indicated by Syllabus Point 1 of *State ex rel. Myers v. Wood,* 154 W.Va. 431, 175 S.E.2d 637 (1970):

> "There is no satisfactory formula to decide if a statute is so vague as to violate the due process clauses of the State and Federal Constitutions. The basic requirements are that such a statute must be couched in such language so as to notify a potential offender of a criminal provision as to what he should avoid doing in order to ascertain if he has violated the offense provided and it may be couched in general language."

*See also State ex rel. Whitman v. Fox,* 160 W.Va. 633, 236 S.E.2d 565 (1977); *State v. Flinn,* 158 W.Va. 111, 208 S.E.2d 538 (1974); *State v. Harrison,* 130 W.Va. 246, 43 S.E.2d 214 (1947).

The United States Supreme Court in *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28 (1972), explained the reasons why vague laws offend due process:

> "First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." (Footnotes omitted).

■ The vagueness standard may vary depending on the type of statute involved. In *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362, 371–72, *reh'g denied,* 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982), the United States Supreme Court discussed this aspect of the vagueness standard, where a licensing ordinance was attacked as vague:

> "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe."

*See also Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). *See also Storrs v. State Medical Board,* 664 P.2d 547 (Alaska), *cert. denied,* 464 U.S. 937, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983); *Town of Brookline v. Commissioner of Dept. of Environmental Quality Engineering,* 387 Mass. 372, 439 N.E.2d 792 (1982); *City of Philadelphia v. Cohen,* 479 A.2d 32 (Pa.Commw.Ct.1984).

■ We have not had occasion to adopt this aspect of the vagueness standard, but we believe it is appropriate under the Due Process Clause vagueness doctrine to apply a less restrictive test to statutes or ordinances involving economic matters in which criminal penalties are not at issue.

■ Furthermore, in a criminal prosecution under the Robinson-Patman Act, where the standard in Section 3 making it unlawful to sell goods at "unreasonably low prices for the purpose of destroying

competition or eliminating a competitor" was challenged, the United States Supreme Court in *United States v. National Dairy Products Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561, *reh'g denied*, 372 U.S. 961, 83 S.Ct. 1011, 10 L.Ed.2d 13 (1963), declined to hold that this language was void for vagueness. The United States Supreme Court reviewed the history of the Act and noted "the business practices against which § 3 was unmistakenly directed" were apparent. 372 U.S. at 36, 83 S.Ct. at 599, 9 L.Ed.2d at 567. It also alluded to the fact that the vagueness doctrine did not apply with the same degree of rigor as it would where "constitutionally protected and socially desireable conduct" is involved. 372 U.S. at 36, 83 S.Ct. at 600, 9 L.Ed.2d at 568. Several courts have addressed this same argument with regard to sales-below-cost statutes and have rejected the same. *Baseline Liquors v. Circle K Corp.*, *supra*; *Trade Commission v. Skaggs Drug Centers, Inc.*, *supra*; *Red Owl Stores, Inc. v. Commissioner of Agriculture*, 310 N.W.2d 99 (Minn.1981), *appeal dismissed*, 456 U.S. 986, 102 S.Ct. 2263, 73 L.Ed.2d 1280 (1982); *Flank Oil Co. v. Tennessee Gas Transmission Co.*, *supra*. Consequently, we do not find the challenged portions of our Unfair Practices Act to be unconstitutionally vague under this less restrictive vagueness standard.

## III.

### SPECIAL LEGISLATION

The third certified question concerns whether or not the Unfair Practices Act is special legislation, in violation of Article VI, Section 39 of the West Virginia Constitution, which states, in part: "[A]nd in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case, nor in any other case in which the courts have jurisdiction, and are competent to give the relief asked for." In *Atchinson v. Erwin*, 172 W.Va. 8, 302 S.E.2d 78 (1983), we discussed at some length this provision against special legislation. We began by stating that:

"The determination of whether a statute is general is essentially a classifica-

tion analysis, and thus we have utilized constitutional equal protection concepts in addressing whether a statute is general or special. In Syllabus Point 7 of *State ex rel. Heck's, Inc. v. Gates*, [149 W.Va. 421, 141 S.E.2d 369 (1965)], we said:

'The constitutional requirement that a law be general does not imply that it must be uniform in its operation and effect in the full sense of its terms. If a law operates alike on all persons and property similarly situated, it is not subject to the objection of special legislation or class legislation and does not violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.'

*See also Shackleford v. Catlett*, [161 W.Va. 568], 244 S.E.2d 327 (1978); *Cimino v. Board of Education of County of Marion*, [158 W.Va. 267], 210 S.E.2d 485 (1974)." 172 W.Va. 14, 302 S.E.2d at 83. We went on to point out that a number of states have applied equal protection concepts to their constitutional prohibition against special legislation. *E.g., State v. Lewis*, 559 P.2d 630 (Alaska), *cert. denied sub nom. Lewis v. Alaska*, 432 U.S. 901, 97 S.Ct. 2943, 53 L.Ed.2d 1073 (1977); *Anderson v. Wagner*, 79 Ill.2d 295, 37 Ill. Dec. 558, 402 N.E.2d 560 (1979), *appeal dismissed sub nom. Woodward v. Burham City Hospital*, 449 U.S. 807, 101 S.Ct. 54, 66 L.Ed.2d 11 (1980); *Paul Kimball Hospital, Inc. v. Brick Township Hospital, Inc.*, 86 N.J. 429, 432 A.2d 36 (1981).

Finally, in *Atchinson*, we observed that the statute in question dealt with economic matters and did not involve fundamental or constitutional rights and concluded in Syllabus Point 7:

"Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does

not violate Section 39 of Article VI of the West Virginia Constitution."

Wheeling Wholesale offers two arguments to support its claim that the Act violates our constitutional prohibition against special legislation. First, it does not operate uniformly on all retailers because independent retailers must buy products from wholesalers that are required to markup their prices in accordance with the Act while chainstore retailers can purchase goods directly from manufacturers that are not covered by the Act and therefore are not subject to the same markup price requirements. Second, the Act permits different standards and prices to be imposed depending on the trade area in which the retailer or wholesaler is located, under W.Va.Code, 47–11A–8(d). Wheeling Wholesale, therefore, contends that the Act does not operate uniformly on all persons in the same class and is not rationally related to a proper governmental purpose. Again, we disagree.

 The classification of retailers and wholesalers is natural and reasonable because goods are sold both by retailers or wholesalers. The fact that chainstore retailers buy from manufacturers does not exempt them from the Act when they sell at retail. Furthermore, this set of circumstances is not involved in this case and we decline to discuss hypothetically what cost advantage, if any, may occur. The fact that the cost provision in W.Va.Code, 47–11A–8(d), is tied to the geographical area is not irrational since this provision relates to an exemption from the provisions of the Act to meet local competition.[12] We, therefore, conclude that Wheeling Wholesale's argument on special legislation lacks merit.

**12.** *See* note 9, *supra*, for the full text of W.Va. Code, 47–11A–8.

**13.** The Sherman Act, 15 U.S.C. § 1, provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and,

## IV.

## SHERMAN ACT

The final question presented is whether or not the Unfair Practices Act should be declared void as violating the federal antitrust prohibitions contained in the Sherman Act, 15 U.S.C. § 1.[13] Wheeling Wholesale argues that the Unfair Practices Act is a price-fixing statute analogous to a fair trade law, which allows a manufacturer to set the minimum price at which its products can be sold. It points out that state fair trade laws were specifically exempted from Sherman Act coverage until the U.S. Consumer Goods Pricing Act of 1975, 89 Stat. 801, was passed by Congress removing this exemption. This point was recognized in *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 102, 100 S.Ct. 937, 941–42, 63 L.Ed.2d 233, 241 (1980):

> "For many years ... the Miller-Tydings Act of 1937 permitted the States to authorize resale price maintenance. 50 Stat. 693. The goal of that statute was to allow the States to protect small retail establishments that Congress thought might otherwise be driven from the marketplace by large-volume discounters. But in 1975 that congressional permission was rescinded. The Consumer Goods Pricing Act of 1975, 89 Stat. 801, repealed the Miller-Tydings Act and related legislation. Consequently, the Sherman Act's ban on resale price maintenance now applies to fair trade contracts unless an industry or program enjoys a special antitrust immunity." (Footnote omitted).[14]

Wheeling Wholesale argues that our Unfair Practices Act is analogous to a fair

on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court."

**14.** Our Fair Trade Act, W.Va.Code, 47–11–1 through –8, was repealed in 1976, presumably in recognition that, with the repeal of the Miller-Tydings Act of 1937, it was in conflict with the Sherman Act. *See* 1976 W.Va.Acts ch. 115.

trade law and, therefore, violates the Sherman Act. We are cited several United States Supreme Court cases, which hold that even though a state statute violates the Sherman Act, the statute may be upheld if it falls within the state immunity exception to the Sherman Act.[15]

■ We decline to address the state immunity issue because immunity only arises as a consideration after the challenged state statute has initially been found to violate the Sherman Act. The threshold inquiry, therefore, is whether our Unfair Practices Act violates the Sherman Act. Cf., *California Retail Liquor Dealers*, 445 U.S. at 102, 100 S.Ct. at 941, 63 L.Ed.2d at 241 ("The threshold question is whether California's plan for wine pricing violates the Sherman Act."). We do not agree with Wheeling Wholesale's argument that fair trade laws are analogous. As explained in *California Retail Liquor Dealers*, fair trade laws are price maintenance schemes. Their distinctive characteristic is a provision that enables a trademark owner, usually a manufacturer, to set by contract with a retailer or wholesaler the price at which the trademarked product should be sold. *See* 1A R. Callman, *supra*, § 6.03.

We have not been cited nor have we found any United States Supreme Court case which has had occasion to directly consider whether a state sales-below-cost statute violates the Sherman Act. In *Safeway Stores, Inc. v. Oklahoma Retail Grocery Ass'n, Inc.*, 360 U.S. 334, 79 S.Ct. 1196, 3 L.Ed.2d 1280 (1959), the United States Supreme Court upheld Oklahoma's statute prohibiting sales below cost against an equal protection challenge. It declined to address the claim that the statute was preempted by federal antitrust laws. 360 U.S. at 342 n. 7, 79 S.Ct. at 1202 n. 7, 3 L.Ed.2d at 1286 n. 7.

The Ninth Circuit Court of Appeals had this issue before it in *William Inglis & Sons Baking Co. v. ITT Continental Bak-ing Co., Inc.*, 668 F.2d 1014 (9th Cir.1981), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982), and had no difficulty in upholding California's sales-below-cost statute against a claim that the field had been preempted by the federal antitrust laws. Although the issue that it violated federal antitrust laws was not directly raised, it is clear from the court's comments in note 62 that it found the statute to be completely compatible with federal antitrust laws:

"The inference of preemption is especially inappropriate because the basic purposes of the state and federal statutes are similar. *See Exxon Corp. v. Governor of Maryland*, [437 U.S. 117, 132–33, 98 S.Ct. 2207, 2217, 57 L.Ed.2d 91, 104–05 (1978)]. The California statute was designed to 'safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition.' Cal.Bus. & Prof.Code § 17001 (West 1964) (statement of legislative purpose); *Harris v. Capitol Records Distributing Corp.*, 64 Cal.2d 454, 461, 413 P.2d 139, 144, 50 Cal.Rptr. 539, 544 (1966). The purposes of the Sherman Act hardly could be stated more succinctly." 668 F.2d at 1050.

*See also Baseline Liquors v. Circle K Corp., supra; Walker v. Bruno's, Inc.*, 650 S.W.2d 357 (Tenn.1983).

■ We have initially set out the legislative intent under our Act, which is to prevent sales at less than cost for purposes of injuring competition. W.Va.Code, 47–11A–1 and –2. This type of predatory price fixing lies at the heart of the Sherman and Robinson-Patman Acts as evidenced by this statement from *United States v. National Dairy Products Corp.*, 372 U.S. 29, 33–34, 83 S.Ct. 594, 598, 9 L.Ed.2d 561, 566, *reh'g denied*, 372 U.S. 961, 83 S.Ct. 1011, 10 L.Ed.2d 13 (1963):

"The history of § 3 of the Robinson-Patman Act indicates that selling below cost, unless mitigated by some acceptable business exigency, was intended to

**15.** *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., supra; Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943); *see also Hoover v. Ronwin*, 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984); *Community Communications Co. v. City of Boulder*, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982).

be prohibited by the words 'unreasonably low prices.' That sales below cost without a justifying business reason may come within the proscriptions of the Sherman Act has long been established. *See, e.g., Standard Oil Co. v. United States,* 221 U.S. 1 [31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.N.S. 834] (1911). Further, when the Clayton Act was enacted in 1914 to strengthen the Sherman Act, Congress passed § 2 to cover price discrimination by large companies which compete by lowering prices, 'oftentimes below the cost of production ... with the intent to destroy and make unprofitable the business of their competitors.' H.R. Rep. No. 627, 63d Cong., 2d Sess. 8. The 1936 enactment of the Robinson-Patman Act was for the purpose of 'strengthening the Clayton Act provisions,' *Federal Trade Comm'n v. Anheuser-Busch, Inc.,* 363 U.S. 536, 544 [80 S.Ct. 1267, 1271–72, 4 L.Ed.2d 1385, 1390] (1960), and the Act was aimed at a specific weapon of the monopolist—predatory pricing. Moreover, § 3 was described by Representative Utterback, a House manager of the joint conference committee, as attaching 'criminal penalties in addition to the civil liabilities and remedies already provided by the Clayton Act.' 80 Cong. Rec. 9419."

█ We, therefore, conclude that the Unfair Practices Act, W.Va.Code, 47–11A–1 through –14, does not violate the antitrust provisions of the Sherman Act, 15 U.S.C. § 1, since both acts prohibit sales below cost for the purpose of injuring or destroying competition.[16] Because we find no violation of the Sherman Act, there is no need to discuss the applicability of the state exemption doctrine under the Sherman Act.

The certified questions having been answered, this case is dismissed from the docket.

Answered and Dismissed.

---

16. Trade associations have been prosecuted either under the Sherman Act or Federal Trade Commission regulations for attempting to stabilize prices or set minimum prices under the guise of enforcing a state sales-below-cost statute. Since only the retailer or wholesaler can possibly know what its own costs are, any attempt by a trade association to inform retailers and wholesalers what their costs should be for a particular product, with an implied threat of prosecution under the state sales-below-cost statute, could possibly subject the association to an antitrust action. In such an event, the fact that the association was attempting to enforce a sales-below-cost statute would not be a valid defense. *See generally Schnapps Shop, Inc. v. H.W. Wright & Co., Ltd.,* 377 F.Supp. 570 (D.Md. 1973); *California Retailer Grocers & Merchants Ass'n v. United States,* 139 F.2d 978 (9th Cir. 1943), *cert. denied,* 322 U.S. 729, 64 S.Ct. 945, 88 L.Ed. 1564 (1944); *Western Confectioners Ass'n,* 34 F.T.C. 1431 (1942); 1 S. Kanwit, Federal Trade Commission § 15.06 (1983); Comment, *Sales Below Cost Prohibitions: Private Price Fixing Under State Law,* 57 Yale L.J. 391 (1948).