# Staunton

## C. B. RANSONE, HEALTH OFFICER OF THE CITY OF ROANOKE v. S. K. CRAFT AND O. H. RIDGEWAY.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Robert C. Jackson,* for the appellant.

No appearance for the appellees.

HUDGINS, J., delivered the opinion of the court.

S. K. Craft and O. H. Ridgeway, barbers, filed their bill in equity, challenging the validity of an ordinance[1] adopted July 15, 1932, by the Roanoke city council, regulating the trade or operation of barbers and beauty culturists within the city. The allegations of the bill are rather vague, but the material charges seem to be (1) that complainants on January 1, 1932, obtained a license from

---

[1] "Be it ordained by the council of the city of Roanoke, Virginia, that:

"Section 1. Definitions.—The term 'barber' shall mean one who shaves or trims the beard or cuts or shampoos, singes or dresses the hair or massages the head, face or neck of any person for pay and shall include operators, apprentices and pupils in barber schools. 'Barber shop' is to embrace any place where the work or business of a barber is done for pay and may or may not include a beauty culture establishment. 'Barber school' shall be construed to mean and include all places where the work or business of a barber is taught or where instructions are given in shaving, hair cutting, shampooing, trimming or massaging for which instructions tuition fees are received or charges are made. 'Beauty culture' shall be construed to mean and include the cosmetic art of hairdressing and shall embrace the arranging, dressing, curling, singeing, waving, cleaning, cutting, bleaching, tinting or coloring of the hair of any person and the massaging, cleansing, and the manipulating of the scalp, face, neck, arms or bust of any person either with the hands, mechanical apparatus or cosmetic preparations for compensation. 'Beauty culture establishments' shall be construed to mean any place in which any person, whether operator, attendant, helper or apprentice, practices beauty culture for compensation and may or may not include a barber shop. The term 'beauty culture school' shall mean any place in which any person or persons teach any or all parts of beauty culture for compensation. The term 'manicuring establishment' shall mean any place in which any person or persons engages in treating the hands

the city for the purpose of conducting a barber's shop therein for the year 1932, and that the city had no right in the license year to change the manner or method of operating the business; (2) that the ordinance is unreasonable and oppressive; (3) that the passage of the ordinance was *ultra vires—i. e.,* the city council was without authority to adopt such regulations.

Respondent C. B. Ransone, health officer of the city of Roanoke, filed an answer to the bill denying the material allegations and averring that the city of Roanoke had full authority and power to pass the ordinance in question. Depositions of several witnesses in support of the allegations in the bill and the answers were duly taken and filed. The court declared the ordinance invalid and void and by decree perpetually enjoined the city health officer from enforcing any of its provisions. From that decree, respondent obtained this appeal.

The complainants below filed no brief in this court,

---

or nails of any person for compensation. The term 'manicuring school' shall mean any place in which the care of the hands and nails is taught for compensation. Wherever the term 'such establishments' is used, it shall be construed to mean and include barber shops, barber schools, beauty culture and manicuring establishments and schools. No part of these definitions nor of this ordinance shall be construed to include or apply to undertakers, doctors, chiropodists or nurses in the practice of their professions.

"Section 2. Permits Required.—It shall be unlawful for any person, association, firm or corporation to conduct, operate or maintain a barber shop, barber school, beauty culture or manicuring establishment or school in the city of Roanoke without first applying for and obtaining from the health department of this city a permit therefor as hereinafter provided. Permits for such establishments are to be posted in some conspicuous place in this establishment and renewed annually.

"Section 3. How Permits May Be Obtained.—Any person, firm or corporation wishing to conduct a barber shop, barber school, beauty culture or manicuring establishment or school shall file with the health department for a permit to conduct such a business. The person or persons making such application shall, at the time of making application, present to the health officer a certificate of health, as hereinafter provided, for each person (operator, assistant helper, apprentice or pupil) who is to be employed in such business. The health officer shall then cause the matter set forth in such application to be investigated, including the sanitary conditions of the place to be operated, and if the conditions conform to the requirements of this

hence we have been denied the benefit of the views of their counsel. Under these circumstances, we have confined our consideration of the case to the two grounds upon which the trial court in its written opinion based its conclusion. These grounds are:

■ (1) That the State Board of Health, under the general power conferred upon it by the legislature, had made rules and regulations on the same subject, with which the ordinance in question was in conflict and therefore void. The bill of complaint does not allege that the ordinance is in conflict with any rule or regulation adopted by the State Board of Health, and there is nothing in the record on which to base the statement in the opinion of the trial judge that the two are in conflict. Under these circumstances, the finding of the trial court on the point is not sustained.

■■ (2) That the legislature had passed no general law empowering municipalities to adopt such regulations,

---

ordinance and the application be approved, a permit shall be granted by the health officer.

"Section 4. (a) Certificate of Health Required.—It shall be unlawful for any person, whether owner, operator, assistant, helper, apprentice or pupil, to attend or serve anyone in any barber shop, beauty culture or manicuring establishment or school or in the residence of any customer or in any other place for compensation unless such preson so serving holds a certificate of health, issued by the health officer of the city of Roanoke and it shall be unlawful for any person, firm or corporation to employ or permit a person to work in such an establishment or school who does not hold a certificate of health, granted by the health officer of this city.

"(b) How Certificate of Health May Be Obtained.—Application for a certificate of health shall be made on a form provided by the health department. The applicant shall then file with the health officer on a form provided by the health department a medical certificate signed by a duly licensed, reputable physician, approved by the health officer, stating that within ten preceding days the applicant has been given a thorough physical examination, including the necessary laboratory tests to determine freedom from infectious diseases. For such medical certificate to be acceptable the examining physician must make a complete physical examination of said person, employing standard, recognized methods and tests for determining the presence of communicable diseases and must make a separate report for each person examined. If the medical certificate, embracing all laboratory tests and the report of the physical examination, as certified to by the examining physician, show the applicant to be free from any infec-

and that the ordinance in question was a private, special and local law and within the inhibition of section 65 of the Virginia Constitution.

It is a matter of common knowledge that the trade, science or profession which is sought to be regulated by the ordinance deals with the treatment of the persons of the patrons by direct application with the hands or mechanical instruments manipulated by the operator. Careless, or unsanitary practice in this trade may induce or spread contagious or infectious diseases, hence such trades or callings are subject to reasonable rules and regulations by the legislative branch of the government. See *State* v. *Reeve* (Fla.) 139 So. 817, 79 A. L. R. 1119; *State* v. *Zeno,* 79 Minn. 80, 81 N. W. 748, 48 L. R. A. 88, 79 Am. St. Rep. 422; *State* v. *Armeno,* 29 R. I. 431, 72 Atl. 216; *Hanzal* v. *San Antonio* (Tex. Civ. App.) 221 S. W. 237, 239.

The charter of the city of Roanoke, among other things, empowered its council:

tious disease in communicable form and not to harbor the causative organizations of or be a 'carrier' of any such disease, and upon approval of the application the health officer shall issue the applicant, free of charge, a certificate of health. Such certificate shall state the date of examination and freedom from any infectious disease in communicable form at the time of examination. This health certificate must be kept in the possession of the person to whom issued and exhibited to the sanitary inspector upon request.

"(c) Health Certificate Not Transferable.—Health certificates. shall not be transferred and shall not be used by any other person than the one to whom issued. Health certificates issued under the provisions of this section shall not be construed to authorize persons to work or the employment of persons to whom issued when such persons thereafter contract or are infected with or have been exposed to any infectious disease requiring isolation or exclusion from their employment by the regulation or ordinance of this city, nor shall such certificate be construed as limiting the power of the health officer to require the re-examination of such person when in his judgment such an examination is necessary.

"(d) Managers to Report Suspicious Cases.—The manager of any barber shop, barber school, beauty culture or manicuring establishment or school shall report immediately to the health department the name and address of any employee whom he knows or suspects to be suffering from any infectious disease in communicable form.

"(e) Certificates of Health to Be Renewed Annually.—Certificates of health, as required in this section, shall be renewed annually.

"Section 5. Infectious Diseases of Attendants.—No person who

"To provide for the preservation of the general health of the inhabitants of said city, make regulations to secure the same; * * * * prevent introduction or spread of contagious or infectious disease, and prevent and suppress disease generally; to provide for the organization of a department of health to have the powers of a board of health, for said city, with the authority necessary for the prompt and efficient performance of its duties, with power to invest any or all the officers or employees of such department of health with such powers as the police officers of the city have; * * * *

"To do all things whatsoever necessary or expedient for promoting or maintaining the general welfare, comfort, education, morals, peace, government, health, trade, commerce or industry of the city or its inhabitants. * * * *

"To make and enforce all ordinances, rules and regulations necessary or expedient for the purpose of carrying into effect the powers conferred by this charter or by any

is affected with any infectious disease in communicable form shall attend any person in such establishment.

"Section 6. Infectious Diseases of Patrons.—No person affected with or who appears to be infected with any infectious disease in communicable form shall be attended in any such establishment.

"Section 7. Sterilization of Implements.—All razors, brushes, combs, scissors, tweezers, blackhead removers, files, polishers, massage and scalp applicators and other implements that come in contact with the skin of the face or neck of customers used in such establishments or in the homes of customers, hospitals or any other place, shall be thoroughly cleansed and sterilized after each and every separate use thereof by immersion in boiling water or exposure to live steam for at least five minutes or by immersion in some disinfecting solution, or by the exposure of disinfecting fumes, or by some other method of sterilization approved by the health officer. The use of such implement which cannot be so treated is prohibited.

"Section 8. Strops and Hones to Be Kept Clean.—All razor strops and hones used in any barber shops and barber schools, beauty culture or manicuring establishments or schools shall be maintained in a cleanly condition at all times and no razor shall be stropped or honed after any use thereof for shaving unless the said razor shall, before such stropping or honing, have been sterilized as required in section 7 of this ordinance.

"Section 9. Individual Towels and Hair Gowns Required.—No towel or hair gown or other cloth which has come in contact with the skin of the face or neck of a customer, shall be used in any such

general law, and to provide and impose suitable penalties for the violation of such ordinances, rules or regulations, or any of them, by fine not exceeding $500, or imprisonment not exceeding six months, or both. The enumeration of particular powers in this charter shall not be deemed or held to be exclusive, but in addition to the powers enumerated herein, implied thereby, or appropriate to the exercise thereof, the said city shall have and may exercise all other powers which are now or may hereafter be possessed or enjoyed by cities under the Constitution and general laws of this State." See section 2, subsections 28, 31 and 32.

 It appears from these provisions, if valid, of the city charter, that the city council had express authority to pass an ordinance regulating such trade or calling. However, it was held by the trial court that the General Assembly was prohibited by section 65 of the Virginia Constitu-

---

establishment on another person without first being laundered or boiled for at least five minutes.

"Section 10. Individual Head-rest Coverings Required.—Before any patron attended in any barber shop or school, beauty culture establishment or school is permitted to recline in a chair, the head-rest of such chair shall be covered with a clean towel or clean sheet of paper not previously used for any other purpose.

"Section 11. Use of Stick Astringents Prohibited.—No alum, or other astringent in stick form shall be used in such establishments.

"Section 12. Use of Powder-puffs, Sponges and Neck Dusters Prohibited.—No powder-puffs, sponge or neck duster shall be used in such establishments.

"Section 13. Use of Soap, Shaving Cup and Finger Bowls in Common Prohibited.—The use of soap, shaving cup and finger bowls in common or for more than one person is prohibited in such establishment.

"Section 14. Attendants to Wash and Sterilize Hands.—All attendants in such establishments shall wash their hands thoroughly with soap and hot water and immerse or rinse them in some disinfecting solution, approved by the health officer before attending any person.

"Section 15. Attendants to Wear Coat or Uniform.—Attendants while attending any patron in any such establishment shall wear a clean, washable outer coat or uniform.

"Section 16. Establishments to Be Lighted and Ventilated.—All such establishments shall be properly and adequately lighted and ventilated.

"Section 17. Walls, Ceilings, Floors, etc., to Be Kept Clean.—The walls, ceilings, floors, furniture and fixtures and all other exposed

tion from delegating any such authority to the municipality except by general law, and that the legislature had passed no general statute on the subject. In other words, that the provisions of the city charter quoted above constituted "local and special legislation," applicable only to the city of Roanoke, and for that reason such grant of power was within the prohibition of section 65. It has been repeatedly held by this court that charters of municipal corporations, or amendments thereto, conferring rights and powers different from, and in addition to, those conferred by general statutes are authorized by the Constitution when enacted in accordance with article 4 (sections 40-68) and section 117 of the Constitution. See *Miller* v. *Pulaski,* 109 Va. 137, 63 S. E. 880, 22 L. R. A. (N. S.) 552; *Town of Narrows* v. *Giles County,* 128 Va. 572, 105 S. E. 82; *City of Portsmouth* v. *Weiss,* 145 Va. 94, 133 S. E. 781;

---

surfaces in such establishments shall be kept clean and free from dust.

"Section 18. Water-closets to Be Provided.—All such establishments shall be provided with suitable and sufficient water-closets, properly flushed, trapped and sewer connected and located in suitable apartments vented to the outside air and provided with self-closing doors and where both males and females, white and colored, are employed in such establishment, such water-closet facilities shall be provided for the separate use of each sex and color.

"Section 19. Washing Facilities to Be Provided.—Such establishments shall be provided with suitable and adequate washing facilities with hot and cold running water and all sinks and wash basins are to be properly trapped and sewer connected.

"Section 20. Inspection to Be Made by Health Department.—The health officer of the city of Roanoke shall cause to be made such inspections and tests as may be required and necessary for the effective enforcement of the provisions of this ordinance. The health officer and inspector shall be granted entrance to all such establishments at any time during working hours.

"Section 21. No License to Be Granted Without Permit.—No license for such establishments opening business for the first time shall be granted by the commissioner of revenue of this city until the manager of such establishment shall have presented to the commissioner a permit from the health department for the operation of such establishment.

"Section 22. Penalty.—Any person violating any of the provisions of this ordinance shall, upon conviction thereof, be fined not less than five nor more than fifty ($50.00) dollars, and upon failure to pay said fine and costs, his permit may be revoked by the health officer."

*McClintock* v. *Richlands Corp.*, 152 Va. 1, 145 S. E. 425, 61 A. L. R. 1033.

■ In the absence of evidence to the contrary, there is a *prima facie* presumption that the charter or an amendment thereof was enacted in the manner required by the Constitution, and that the rights and powers conferred are within the legislative power to grant. There is not a suggestion in the record tending to show that the charter of the city of Roanoke was not enacted in the manner required by article 4 and section 117 of the Constitution.

■ The charge that the provisions of the ordinance are harsh, unreasonable and arbitrary is made in very general terms and with no proof offered to support the allegation. It seems that the ordinance was adopted with the full consent and approval of a great majority of the men and women engaged in these operations within the city. Under these circumstances, we do not feel constrained to analyze each section of the ordinance for the purpose of finding one provision of doubtful value, or which might under some circumstances work a possible hardship, especially when the parties making the attack content themselves with indefinite charges and offer no substantial proof in support thereof. It is true some evidence introduced by complainants tends to show that a compliance with the provisions of the ordinance would require an outlay for each shop in excess of $100, but a careful analysis of the evidence and the provisions of the ordinance itself clearly shows that a compliance with its terms does not necessarily require an outlay for each operator of more than $10.00. When the object sought to be attained is considered, it cannot be said that this requirement is either unreasonable or arbitrary.

For the reasons stated, the decree of the lower court is reversed, and final decree will be here entered for respondent.

*Reversed.*