COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Huff and Raphael
Argued at Norfolk, Virginia

PUBLISHED

DAVID W. FAUBER

v.      Record No. 0366-23-1

TOWN OF CAPE CHARLES, ET AL.

OPINION BY
JUDGE STUART A. RAPHAEL
JANUARY 30, 2024

FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
W. Revell Lewis, III, Judge

Kevin E. Martingayle (Bischoff Martingayle, P.C., on briefs), for
appellant.

Jeffrey A. Hunn (Richard H. Matthews; Pender & Coward, P.C., on
brief), for appellees.

Article VII, § 6 of the Virginia Constitution provides that a person elected to the

governing body of a locality is ineligible, "during the term of office for which he was elected or

appointed, to hold any office filled by the governing body." Under its charter, the Town of Cape

Charles is "governed by a town council composed of six councilmen and a mayor, all of whom"

are "elected from the town at large." 1974 Va. Acts ch. 340, § 3.1(a). The mayor is the "chief

executive officer of the town." *Id.* § 3.5. The town council may appoint a "town manager," who

serves as "the executive officer of the town." *Id.* §§ 4.1, 4.5. If a vacancy occurs in the office of

town manager, the charter provides that "the duties and powers" of the town manager "shall be

given the mayor, or such other person as may be designated by the town council." *Id.* § 4.5.

During a vacancy in the office of town manager, the mayor of the Town of Cape Charles,

William Dize, exercising the powers of the town manager under § 4.5 of the charter, fired the

director of public works and utilities, David Fauber. Fauber claims that his firing violated

Article VII, § 6, because Dize was simultaneously holding the offices of mayor and town manager. The circuit court granted summary judgment to the town and the mayor.

We find no error in that ruling. We reject Fauber's claim that § 4.5 of the town's charter is unconstitutional. And we find that summary judgment was appropriate because it was undisputed that Mayor Dize was simply exercising the powers of the town manager during the temporary vacancy in that office. Dize was not simultaneously serving as mayor and holding an office filled by the governing body.

BACKGROUND

The town's charter provides for the town council to appoint certain designated "officers," including "a town manager." *Id.* § 4.1. All other employees of the town are "appointed and may be removed by the town manager." *Id.* § 4.5.

David Fauber was employed by the Town of Cape Charles as the director of public works and utilities, a position he had held since 2007 or 2008. That position was established by an ordinance providing that the director served as the "manager of the town's treatment works," working "under the direction of the town manager." Town of Cape Charles, Va., Code of Ordinances § 71-3 (2019).

Fauber reported to the town manager, Larry DiRe, until DiRe resigned in November 2019. The town's charter provides that, upon a vacancy in the office of town manager, the mayor assumes the town manager's duties until the council appoints a successor town manager:

> The town council shall designate by ordinance a person to act as town manager in the case of the absence, incapacity, death or resignation of the town manager, until his return to duty or the appointment of his successor. Until such time as the town council appoints any such town manager, the duties and powers outlined herein shall be given the mayor, or such other person as may be designated by the town council.

1974 Va. Acts ch. 340, § 4.5.

- 2 -

When Town Manager DiRe resigned in November 2019, the council did not immediately appoint his successor. As Mayor Dize put it in his deposition, he "assumed the powers of the town manager until council appoints somebody."[1] The council did not fill the office of town manager until March 2020, when it appointed John Hozey as the new town manager.

During that interim four-month period, Dize performed his duties as mayor and signed all his emails as "mayor." Dize also performed the duties of the town manager, including writing the town manager's weekly report. Town employees were told if they needed "something that was normally done by the town manager, like another signature or a decision, that [they were] to go to the mayor." Though performing the duties of town manager, Dize did not sign any papers as "[t]own manager, acting town manager, or interim town manager." Rather, in all of his communications, Dize identified himself as "mayor."

On February 10, 2020, Mayor Dize terminated Fauber's employment as director of public works and utilities. Dize emailed several town employees that he had "decided to eliminate the Director of Public Works and Utilities position." In an undated, signed letter to Fauber, Dize wrote, "I have decided that [it's] time for a change within the Public Works and Public Utilities departments. This is your notice of change. Let this letter serve that I am eliminating the position [e]ffective 2/24/20 and you will no longer be employed by the Town of Cape Charles."[2]

Nearly a year later, in January 2021, the town council amended § 71-3 of the town code to eliminate the position of Director of Public Works and Utilities. *See* Town of Cape Charles,

---

[1] Fauber offered deposition testimony in opposition to the defendants' motion for summary judgment. *See* Code § 8.01-420(A); Rule 3:20.

[2] Fauber alleges that this letter was "never delivered to him" and that he saw it for the first time when his lawyer obtained Fauber's personnel file from the Town. The Town claims that the letter was delivered to Fauber. Taking the facts in the light most favorable to Fauber, we assume that the letter was not delivered to Fauber but that it correctly states the basis on which Dize terminated his employment.

- 3 -

Va., Ordinance No. 20210121, § 71-3 (Jan. 21, 2021), codified as amended at Town of Cape Charles, Va., Code of Ordinances § 30-61 (2023).  The revised ordinance stated simply, "The town manager or designee shall administer, implement, and enforce" the provisions of the public utilities ordinance.  *Id.*

Fauber sued the Town of Cape Charles and Mayor Dize for wrongful termination. Fauber's second amended complaint contained four counts, all challenging his firing.  The defendants moved for summary judgment, arguing that there were no material facts in dispute about Mayor Dize's authority to terminate Fauber.

After briefing and argument, the trial court granted the defendants' motion.  The court found that § 4.5 of the town charter unambiguously empowered Mayor Dize to exercise the powers of the town manager until a successor town manager was appointed.  The court concluded that Mayor Dize properly exercised the power of the town manager to terminate Fauber's employment.  "The point is to have the continuity of the government of the Town of Cape Charles," and that provision "absolutely assures that there's no interruption in the administration of the government."  Fauber noted a timely appeal.

ANALYSIS

Fauber's five assignments of error can be grouped into two categories.  Three assignments of error challenge the legality of the mayor's actions under the charter, arguing that Dize exceeded his authority and illegally held the offices of both mayor and town manager.  The other two assignments of error argue that the material facts were disputed, precluding summary judgment.

    A. *The charter properly vests the "duties and powers" of the town manager in the mayor when the position of town manager is vacant.*

The town charter is an act of the General Assembly, and the construction of its provisions presents "a pure question of law [that] we review de novo."  *Conyers v. Martial Arts World of*

*Richmond, Inc.*, 273 Va. 96, 104 (2007).  When the text of a statute is unambiguous, we are bound by its "plain meaning."  *Va. Elec. & Power Co. v. State Corp. Comm'n*, 295 Va. 256, 263 (2018).

> 1. *Because the office of town manager was vacant, the charter conferred on the mayor the power to terminate Fauber's employment (Assignment of Error 3).*

The charter empowers the town manager, not the mayor, to hire and fire employees of the town.  1974 Va. Acts ch. 340, § 4.5 ("All employees of the town, except those appointed by the town council . . . shall be appointed and may be removed by the town manager . . . .").  Fauber argues that Mayor Dize could not fire him because the town council "never voted to give Dize" the "duties and powers" of the town manager.  Fauber misunderstands the charter.

When there is a vacancy in the town manager position, § 4.5 of the charter empowers the mayor to exercise the powers of the town manager until a successor town manager is appointed: "Until such time as the town council appoints any such [successor] town manager, the *duties and powers outlined herein shall be given the mayor*, or such other person as may be designated by the town council."  1974 Va. Acts ch. 340, § 4.5 (emphasis added).  Thus, after Town Manager DiRe resigned, Mayor Dize assumed the town manager's powers until a successor town manager could be appointed by the council.

Fauber resists that conclusion, but his arguments are unpersuasive.  He says that the mayor could not assume the powers of the town manager until the council affirmatively voted to give him those powers.  But that claim cannot be squared with the text of § 4.5.  That charter provision says that the "powers outlined herein shall be given the mayor."  That language makes the transfer of power self-executing; it does not require further action by the town council.

That reading is corroborated by the second half of the sentence, which provides for the town manager's powers to transfer to someone other than the mayor, but only if "such other

- 5 -

person" is "designated by the town council." *Id.* In other words, while the town council could designate someone else to be the new town manager upon a vacancy in that position, unless the council does so, the town manager's powers are automatically "given the mayor." *Id.* As the trial court properly recognized, this interpretation protects the continuity of government in situations where the town manager dies, resigns, becomes incapacitated, or is terminated.

It follows from the plain language of § 4.5 that when Town Manager DiRe resigned, Mayor Dize was "given" the "duties and powers" of the town manager. Those duties and powers included the power under § 4.5 to remove town employees like Fauber.

### 2. *The charter provision does not violate the Virginia Constitution (Assignment of Error 2).*

Article VII, § 6 of the Virginia Constitution provides that "[n]o member of a governing body shall be eligible, during the term of office for which he was elected or appointed, to hold any office filled by the governing body by election or appointment," except for certain exceptions not applicable here. There has been little caselaw interpreting this provision.[3] The prohibition on holding dual offices is codified at Code § 15.2-1535(A).

Fauber argues that § 4.5 of the town's charter is unconstitutional because it permits the mayor to simultaneously exercise the "duties and powers" of the town manager.[4] "In the absence of evidence to the contrary, there is a *prima facie* presumption that the charter or an amendment thereof was enacted in the manner required by the Constitution, and that the rights and powers conferred are within the legislative power to grant." *Ransone v. Craft*, 161 Va. 332, 341 (1933).

---

[3] *See Bray v. Brown*, 258 Va. 618, 621 (1999) (holding that Article VII, § 6 did not prohibit a deputy sheriff of Prince William County from serving as a member of the Town Council of Dumphries because he was "was neither elected nor appointed as a deputy sheriff by the Dumphries Town Council").

[4] Fauber provided notice of his constitutional challenge to the Attorney General on August 28, 2023. *See* Rule 3:14A. By letter to this Court dated September 27, 2023, the Attorney General declined to intervene to defend the constitutionality of the charter.

- 6 -

Fauber has failed to rebut that presumption of constitutionality. Indeed, Fauber has conflated the distinction between a mayor's temporarily exercising the powers of the town manager when the latter office is vacant, on the one hand, with a person's simultaneously serving as mayor and the council's appointed town manager, on the other. The constitutional prohibition in Article VII, § 6 applies to a member of the local governing body who simultaneously "hold[s]" an office "filled by the governing body by election or appointment." Va. Const. art. VII, § 6. That language does not prevent a mayor or other member of a governing body from serving as a caretaker by exercising the town manager's powers from the time that office becomes vacant until a successor is appointed. The mayor is not simultaneously holding an office "by election or appointment" from the same governing body on which he serves.

Thus, when Town Manager DiRe resigned, Mayor Dize temporarily exercised the powers of the town manager under § 4.5 of the charter, pending the council's appointment of a successor town manager. Mayor Dize did not simultaneously hold the office of town manager by appointment of the town council. Fauber concedes that the council never appointed Mayor Dize to the town-manager position. And the record contains no suggestion that Mayor Dize was paid the salary of the town manager while acting in a caretaker role. Rather, the office of town manager was still vacant.

In finding § 4.5 of the town's charter to be constitutional, we "consider it to be highly persuasive," *Howell v. McAuliffe*, 292 Va. 320, 339 (2016), that the General Assembly has included the identical provision in many town charters enacted over the last half century.[5] *Four*

---

[5] *See* 1972 Va. Acts ch. 68, § 4.5 (Town of Louisa); 1972 Va. Acts ch. 258, § 4.5 (Town of Mineral); 1973 Va. Acts ch. 100, § 6 (Town of Clarksville); 1974 Va. Acts ch. 340, § 4.5 (Town of Cape Charles); 2002 Va. Acts ch. 126, § 4.5 (Town of Exmore); 2007 Va. Acts chs. 243, 299, § 4.5 (Town of Cheriton); 2009 Va. Acts chs. 398, 520, § 4.5 (Town of Nassawadox); 2019 Va. Acts ch. 798, § 4.1:1 (Town of Onley); 2020 Va. Acts chs. 125, 1252, § 5.12 (Town of Scottsville).

of those town charters, including for the Town of Cape Charles, were enacted between 1972 and 1974, shortly after the Constitution of 1971 was ratified. *See supra* note 5. "As Justice Holmes so succinctly put it, 'a page of history is worth a volume of logic.'" *Howell*, 292 Va. at 339 (quoting *New York Tr. Co. v. Eisner*, 256 U.S. 345, 349 (1921)).

> When government actors have adopted a "practical construction" of a constitutional provision that "has been acquiesced in for a considerable period, considerations in favor of adhering to this construction sometimes present themselves to the courts with a plausibility and force which . . . is not easy to resist," especially "where a particular construction has been generally accepted as correct."

*Id.* (alteration in original) (quoting Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest upon the Legislative Power of the States* 102 (Victor H. Lane ed., 7th ed. 1903)). In other words, "[c]ontemporaneous legislative construction of a constitutional provision is entitled to great weight." *Almond v. Day*, 197 Va. 782, 794 (1956) (quoting *Roanoke v. Michael's Bakery Corp.*, 180 Va. 132, 143 (1942)).

Applying that principle, we reject Fauber's claim (made at oral argument) that every town charter enacted since 1971 that contains this provision is unconstitutional. To be sure, having a default rule that the mayor will perform the town manager's duties when that office becomes vacant is not the *only* model used by the General Assembly.[6] But the General

---

[6] Town charters in Virginia come in many flavors, particularly when addressing town-manager succession. Some provide for the council to select an interim, acting, or successor town manager. *E.g.*, 2019 Va. Acts ch. 308, § 4.7 (Town of Berryville); 2018 Va. Acts ch. 395, § 4.6 (Town of Buchanan); 2013 Va. Acts chs. 545, 628, § 23 (Town of Bedford); 1972 Va. Acts ch. 755, § 4.2 (Town of Burkeville); 1937 Va. Acts ch. 44, § 14 (Town of Front Royal). Some provide for the town manager to designate an acting town manager to perform his duties during any absence, vacancy, or incapacity. *E.g.*, 2020 Va. Acts chs. 126, 891, § 4.1:1 (Town of Middleburg); 1986 Va. Acts ch. 47, § 4.03 (Town of Pulaski); 1975 Va. Acts ch. 619, § 4.03 (Town of Blacksburg). Some expressly disable councilmembers during their term (and sometimes for a year afterwards) from being appointed to serve as town manager. *E.g.*, 2023 Va. Acts chs. 58, 59, § 18 (Town of Farmville); 2013 Va. Acts chs. 565, 628, § 25 (Town of Bedford); 1937 Va. Acts ch. 44, § 14 (Town of Front Royal). At least one permits the mayor to

Assembly's longstanding and consistent use of that mechanism provides strong evidence that it does not offend the Constitution.

### 3. The mayor's inability to unilaterally eliminate the director position did not prevent the mayor from firing Fauber (Assignment of Error 4).

Fauber also argues that Mayor Dize unlawfully fired him because, in doing so, the mayor wanted to "eliminate the 'Director of Public Works & Utilities position.'" Fauber notes that § 71-3 of the town code, in effect in 2020, established that position and the mayor could not unilaterally amend the code to eliminate it. The defendants do not dispute that a vote of the council was needed to amend the ordinance. They note that the town council eventually took that step in January 2021, abolishing the director position. *See* Town of Cape Charles, Va., Ordinance No. 20210121, *supra*, § 71-3.

Yet Fauber fails to show what difference it makes that the position from which he was fired was created by a town ordinance. As the town charter makes clear, "*All* employees of the town, except those appointed by the town council, . . . may be removed by the town manager." 1974 Va. Acts ch. 340, § 4.5 (emphasis added). *All* means all. There is no exception for persons occupying positions created by ordinance. Like other town employees, Fauber was simply "an at-will employee" who could have been fired "for any reason or none at all." *Viers v. Baker*, 298 Va. 553, 557 (2020).[7] So even assuming that Mayor Dize fired Fauber in anticipation of the town council's eventually eliminating the position altogether, it would not render Fauber's firing

---

serve as the town manager, but "for no greater than six months." 2014 Va. Acts chs. 237, 710, § 48 (Town of Victoria). And many charters are simply silent about what happens when vacancies occur in the town-manager position. *E.g.*, 2006 Va. Acts ch. 263, § 4 (Town of Altavista).

[7] Fauber has not claimed that his firing as an at-will employee was unlawful under the "*Bowman* public policy exception." *Francis v. Nat'l Accrediting Comm'n of Career Arts & Scis., Inc.*, 293 Va. 167, 172-73 (2017) (discussing "three circumstances or 'scenarios'" in which "a claim was sufficient to constitute a common law cause of action for wrongful termination of an at-will employee" under *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985)).

unlawful. Nothing in the charter required that Fauber's position remain filled, let alone that it stay filled by the same employee that his employer decided should be let go.

      *B. The material facts were not in dispute, entitling the defendants to summary judgment (Assignments of Error 1 and 5).*

In his two remaining assignments of error, Fauber contends that the trial court erred in granting summary judgment under Rule 3:20 because the material facts were disputed. We review a trial court's decision granting summary judgment de novo. *Stahl v. Stitt*, 301 Va. 1, 8 (2022). In doing so, we apply "the same standard a trial court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Id.* (quoting *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009)).

"Summary judgment is appropriate in cases where no 'material fact is genuinely in dispute' and the moving party is entitled to judgment as a matter of law." *Ranger v. Hyundai Motor Am.*, ___ Va. ___, ___ (Apr. 6, 2023) (quoting Rule 3:20). The "key phrase" in Rule 3:20—"'entitled to judgment' — requires the moving party to demonstrate that no '*material*' facts are 'genuinely in dispute.' It follows that *immaterial* facts genuinely in dispute . . . do not preclude the entry of summary judgment." *AlBritton v. Commonwealth*, 299 Va. 392, 403 (2021) (emphases added) (quoting Rule 3:20).

We agree with the trial court that no genuine issues of material fact precluded summary judgment here. Fauber claims that two facts were important and disputed, but we find neither to be material.

First, we disagree with Fauber that whether Mayor Dize could unilaterally amend the town ordinance that created the director position was a disputed issue of material fact. (Assignment of Error 5.) As already noted, the town and Mayor Dize concede that an act of the town council was necessary to amend the ordinance to formally eliminate that job position. Even

- 10 -

so, Fauber was an at-will employee who could be fired at any time, even if the position he occupied remained on the books.

We also reject Fauber's claim that there was an "unresolved dispute regarding the capacity in which Dize was acting or purporting to act when he eliminated Fauber's position and employment." (Assignment of Error 1.) Mayor Dize's deposition testimony generally aligned with the defendants' legal theory about § 4.5 of the charter. Dize testified that he "assumed the powers of the town manager until council appoints somebody." Still, Fauber points to at least one instance when Mayor Dize answered a question in a way that suggested that he *was* the town manager, not just that he was exercising the powers of the town manager:

> Q. And when Mr. DiRe stepped down as town manager, who took over?
>
> A. I did.
>
> Q. *So you became the town manager*?
>
> A. *I did*.
>
> Q. How did that happen?
>
> A. Well, I just stepped in. Followed the charter. Town charter says that until council appoints somebody else, the mayor assumes the role of town manager. So I just stepped in until they appointed somebody, which was Mr. Hozey . . . .

(Emphases added.)

We disagree with Fauber that Mayor Dize's testimony created a genuine dispute of material fact that precluded summary judgment. As Fauber acknowledged at oral argument, a party could testify in a deposition that he is "the Governor of Virginia," but that would not make it so, let alone create a dispute of material fact about his gubernatorial status. *Cf. Fallsburg Power & Mfg. Co. v. Alexander*, 101 Va. 98, 109 (1903) ("The mere recognition of the corporation in its charter as an 'internal improvement company' does not make it so . . . ."); *Manchester Cotton Mills v. Town of Manchester*, 66 Va. (25 Gratt.) 825, 834 (1875) ("[T]he

- 11 -

mere declaration of the . . . town . . . that the tenement in controversy is an obstruction upon a public street, does not make it so. Whether it is or is not is a question to be settled by the courts."). A person's status as governor or town manager depends on whether he is duly elected or appointed to the position.

Only the town council could have appointed a successor town manager, 1974 Va. Acts ch. 340, § 4.1, and Fauber conceded at oral argument here that it is undisputed that the town council *never* appointed Mayor Dize to be the town manager following DiRe's resignation. Thus, Mayor Dize's imprecision in his deposition about his legal role after DiRe resigned does not show that Dize *was* the appointed town manager, rather than simply exercising the powers of town manager under § 4.5 of the charter.

CONCLUSION

We find no constitutional infirmity in § 4.5 of the town's charter, which sensibly provides for the mayor to assume the powers and duties of the town manager until the town council appoints a successor town manager. Because those powers included the power to terminate Fauber's employment, the trial court did not err in concluding that Mayor Dize lawfully fired him. The trial court also correctly determined that no genuine issues of material fact precluded summary judgment on Fauber's wrongful termination claims.

*Affirmed.*